UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES PATYRAK, | |
| Plaintiff, | **Civil No. 10-6800 (FLW)** |
| v. | **MEMORANDUM OPINION** |
| PTLM. TIMOTHY APGAR, et al., | |
| Defendants. | |

 This matter having been opened to the Court by way of motion of Richard Guss, Esq., counsel for Defendants Ptlm. Timothy Apgar, Ptlm. Cialone, Ptlm. Dendis, and Township of Raritan, Police Department (collectively, "Raritan Defendants"), moving to dismiss Plaintiff's Complaint, pursuant to Fed. R. Civ. P. 12(c); it further appearing that Vito Gagliardi, Esq., counsel for Defendants Borough of Flemington Police Department and Ptlm. Jeffrey Austin (collectively, "Flemington Defendants"), (all defendants collectively referred to as "Defendants"), also move to dismiss Plaintiffs' Complaint; it appearing that:

 1. According to the instant complaint, Plaintiff initially commenced an excessive force action, under 42 U.S.C. § 1983, in the Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. HNT-L-241-03, against all the defendants named in this suit, on May 8, 2003. Compl., ¶ 3. The complaint revolved around an incident that took

place on or about May 9, 2001. Thereafter, on June 30, 2003, the suit was removed to the District of New Jersey and was assigned Docket No. 03-3127. Id. at ¶ 4.

2. Sometime after the suit was removed, criminal charges relating to the underlying suit were brought against Plaintiff. See id. at ¶ 5. According to the instant complaint, in or about December 2003, the parties stipulated that Plaintiff could dismiss his suit without prejudice in light of the criminal charges filed against him. Id.

3. The Magistrate Judge presiding over the suit at that time, subsequently issued an order titled "Order Administratively Dismissing Case," ("Order"), which stated, in pertinent part:

> It appearing that the Plaintiff in this case has been charged in a criminal case entitled State vs. Patyrak, . . . and the facts in the criminal case relate to the incident which is the subject of this lawsuit; and it further appearing that Plaintiff cannot respond to certain discovery requests in this matter without prejudicing his Fifth Amendment rights; and it appearing that the resolution of the case of State v. Patyrak may resolve some or all of the issues in this litigation . . . [it is] ORDERED that the Clerk shall administratively terminate this action . . . without prejudice to the right of the parties to reopen the proceedings for good cause shown . . .

Patyrak v. Agar, et al., Docket No. 03-cv-3127 (SRC) (Docket Entry No. 6) (emphasis added) at 1.[1]

---

[1] The order was filed on April 22, 2004, although the text of the order is apparently mistakenly dated April 21, 2003 as opposed to April 21, 2004. For purposes of these motions, the Court will use April 21, 2004 as the operative date of the order.

4. Importantly, the Judge further ordered that "the entry of this Order of Administrative Dismissal shall not grant to the Defendants the right to assert a defense of Statute of Limitations by virtue of the administrative Dismissal, except to the extent that the facts supporting the defense existed prior to the Administrative Dismissal ...." Id. at 2. The order did not include a date or time frame by which Plaintiff was to seek to reopen the proceedings.

5. Thereafter, on December 29, 2010, Plaintiff filed the instant complaint in this Court, in lieu of seeking permission to reopen his prior civil proceeding docketed as 03-cv-3127.

6. Defendants now move to dismiss the instant complaint, arguing that the applicable two-year statute of limitations bars Plaintiff's Complaint and that the filing of a new complaint was not the proper means of complying with the Order Administratively Dismissing Case issued in the prior action.

7. The standard that a court applies on a motion for judgment on the pleadings pursuant to Rule 12(c) is the same standard that a court applies in deciding a motion to dismiss pursuant to Rule 12(b)(6). Turbe v. Government of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991). In reviewing a motion to dismiss for failure to state a claim under 12(b)(6), a Court must take all allegations in the complaint as true, viewed in the light most favorable to the plaintiff "and determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted).

8. The statute of limitations applicable to excessive force section 1983 actions against New Jersey actors is two years, Large v. County of Montgomery, 307 Fed.Appx. 606, 607 (3d Cir. 2009), based on New Jersey's personal injury statute.

9. As an initial matter, the Court notes that it is not clear exactly when Plaintiff's criminal proceedings concluded. Plaintiff submitted court records from one of his criminal proceedings indicating that the proceeding was dismissed and initially downgraded from a criminal court matter to a municipal court matter on September 22, 2004. See Patyrak Cert., Exh. E (J. Mahon Order).[2] The Flemington Defendants, further, submitted court records suggesting that all criminal matters were resolved sometime between September 2004 and November 2008, with the last criminal matter being dismissed by November 6, 2008. See Bauknight Cert., Exh. E.[2] While the state court records are not entirely clear, on their face, as to the November 2008 date, in light of Plaintiff's pro se status, the Court gives Plaintiff the benefit of the doubt by considering this latter most date as the date upon which

---

[2] The Court may consider these court records on a motion to dismiss. Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004). Plaintiff submitted additional exhibits, ranging from a claim letter from the Borough of Flemington to letters from his criminal attorney regarding the status of the criminal proceeding. Because these documents are not public records, and the complaint does not rely upon them, the Court may not consider them here. Id.

his criminal proceedings concluded.

10. Although the plain text of the Order Administratively Dismissing Case explicitly states that it does "not grant to the Defendants the right to assert a defense of Statute of Limitations by virtue of the administrative Dismissal, except to the extent that the facts supporting the defense existed prior to the Administrative Dismissal ....", Order Administratively Dismissing Case at 2, Defendants argue that more than two years have expired since Plaintiff's criminal proceedings concluded on November 6, 2008.  In their view, if the statute was tolled during the criminal proceedings until November 6, 2008, and even allowing Plaintiff the benefit of a full two years from that date, as opposed to deducting from that two years any portion of the limitations period that already expired before he instituted the 2003 suit, the two-year limitation period should have expired on November 6, 2010, yet Plaintiff's Complaint was not filed until December 29, 2010. Moreover, Defendants further argue, Plaintiff did not comply with the terms of the order because he filed a new complaint as opposed to seeking to reopen the prior civil proceeding.

11. It is clear that Plaintiff did not comply with the Order Administratively Dismissing Case because he filed a new complaint.  However, it would elevate form over substance to dismiss the instant complaint solely based upon that procedural infirmity.

12.  A proper reading of the Magistrate Judge's ruling is that the time until the

criminal proceedings concluded would be excluded from any statute of limitations calculations. Once those proceedings concluded, the basis for the Judge's ruling—to ensure that Plaintiff did not have to waive his Fifth Amendment rights in order to comply with his discovery obligations—was no longer applicable, and there was no impediment to him pursuing his civil claims and fully participating in the discovery process. Thus, the clock began to run again when the criminal proceedings ended on November 6, 2008.

13. For this reason, it would not be a reasonable construction of the Order that the Defendants could never raise a statute of limitations offense, no matter how long Plaintiff delayed in re-filing his claim. This would run counter to the key policies of statutory limitations periods, which are, inter alia, to "create desirable security and stability in human affairs by fostering eventual repose, and to spare the courts from the burden of stale claims." Jaworowski v. Ciasulli, 490 F.3d 331, 334 (3d Cir. 2007) (quoting Galligan v. Westfield Centre Service, Inc., 82 N.J. 188, 412 A.2d 122 (1980)) (internal alterations and quotation marks omitted).

14. While the Court appreciates that Plaintiff relied upon the Order to wait until his criminal proceedings concluded before re-instituting his civil suit, he has not explained why it took him more than two years from the conclusion of the criminal proceedings to file the instant complaint. In addition, Plaintiff's claims revolve around an incident that took place on or about May 9, 2001. To consider these claims over ten years later would

run counter to the policy of sparing the courts from the burden of stale claims. Furthermore, the Defendants would be prejudiced by having to defend against such claims. See Bell Atlantic-Pennsylvania, Inc. v. Pennsylvania Public Utility Com'n, 273 F.3d 337, 346 (3d Cir. 2001) ("Limitations periods are designed to foreclose the potential for inaccuracies and unfairness brought about by a finding of liability based on stale evidence.") Accordingly, because Plaintiff did not file the instant complaint within two years of the conclusion of his criminal proceeding, his complaint must be dismissed. An appropriate Order will accompany this Opinion.

/s/ Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.

Dated: November 29, 2011